IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Jesse Daniel Brown, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> Hannah R. Wimberly, a/k/a Hannah ) <br> Wimberly a/k/a Wimberly, sued in her ) <br> individual capacity while acting under ) <br> the color of state law; and J. Conley ) <br> a/k/a Conley, sued in his individual ) <br> capacity while acting under the color ) <br> of state law, ) <br> ) <br> Defendants. ) <br>_____) | Civil Action No. 9:14-cv-02336-RMG-MGB <br><br> **REPORT AND RECOMMENDATION <br> OF MAGISTRATE JUDGE** |

The Plaintiff, proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon a Motion for Summary Judgment (Dkt. No. 33) filed by Defendants Wimberly and Conley.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought the instant action against Hannah Wimberly, J. Conley, and W.P. Murphy on or about June 10, 2014. (Dkt. No. 1.) On or about July 14, 2014, Plaintiff amended his Complaint. (See Dkt. No. 11; see also Dkt. No. 1.)[1] On September 2, 2014, the Honorable Wallace W. Dixon issued a Report and Recommendation ("R&R"), recommending that Plaintiff's claims against W.P. Murphy be dismissed without prejudice and without issuance and service of process.

---

[1] The amendment merely specifies that Plaintiff is suing the Defendants in their individual capacities. (See Dkt. No. 11.)

1

(Dkt. No. 17.) Judge Gergel adopted that R&R, and dismissed Murphy from the case, on October 3, 2014. (Dkt. No. 27.)

On December 17, 2014, Defendants Conley and Wimberly[2] filed a Motion for Summary Judgment. (Dkt. No. 33.) By order filed December 17, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 34.) Plaintiff filed a Response in Opposition to the Motion for Summary Judgment on or about January 23, 2015. (Dkt. No. 38.)

## ALLEGED FACTS

Plaintiff, who was incarcerated at the Beaufort County Detention Center at the time he filed the instant action,[3] states that he seeks to litigate, *inter alia*, the following issues in this case: "false arrest, false imprisonment; double jeopardy; acting under the color of law to falsly [sic] exercise state law; malicious prosecution; . . . character defamation; [and] slander and libel." (Dkt. No. 1 at 1-2 of 38.)

Plaintiff's claims against Wimberly and Conley arise out of some traffic tickets Plaintiff received. Plaintiff alleges that on October 15, 2012, Defendant Conley arrested Plaintiff on traffic ticket F591443 ("traffic/hit and run, att. of vehicle, duties of driver involved in accident, property damage"). (Dkt. No. 1 at 9-10 of 38.) Plaintiff also alleges he received traffic ticket F594886 (which was dated October 15, 2012), from Defendant Wimberly; this ticket charged Plaintiff with "driving left of center." (Id. at 10.) According to Plaintiff, one ticket (F594886) was stamped 2:20 AM, and the other (F591443) was stamped 2:22 AM, despite the fact that "the distance between the two points was 9.3 miles (a driving distance of 21 minutes) according to Google maps." (Id. at 11-12 of 38.)

---

[2] Hereinafter, any reference to "Defendants" is a reference to Defendants Wimberly and Conley.

[3] It appears that Plaintiff has since been released. (See Dkt. No. 22.)

Plaintiff maintained that he was not guilty of these charges, as his vehicle had been stolen; Plaintiff alleges the officers came to his house after he called 911 to report the vehicle stolen. (Dkt. No. 1 at 9-20 of 38.) According to Plaintiff, Conley arrived and asked Plaintiff "why the clerk of some store thought she had seen Plaintiff"; Plaintiff stated that he did not know. (Dkt. No. 1 at 9-10 of 38.) Plaintiff alleges, "Conley said he had heard enough and arrested Plaintiff . . . on a charge of 'leaving the scene,' written on . . . . ticket #F591443." (Id. at 10.)

Plaintiff alleges he appeared before a Magistrate on ticket F594886 on November 6, 2012, where he also met Defendant Wimberly for the first time. (Id. at 12-13 of 38.) Plaintiff states, "11-6-2012, the same day, the Judge . . . disposed of the case with a judicial dismissal, and orders to expunge the Plaintiff's record and destroy all the evidence . . . ." (Dkt. No. 1 at 14 of 38.) According to Plaintiff, however, after he left, the Judge "signed a warrant with Officer Wimberly signing as the affiant to arrest Plaintiff for the charge of driving on the wrong side of the road, concerning the same incident that had been disposed of, and relating to the same ticket as F594886, which had been disposed of." (Id. at 14.) Plaintiff states that "[t]his warrant was labeled 2012A0710300269, but consisted of the exact same charges, places, and times of ticket F594886." (Id.)

Plaintiff alleges he went to court on November 15, 2012, on ticket F591443, and the case was continued to January 24, 2013. (Id. at 15-16.) Plaintiff states,

> After all the other defendants left, Plaintiff noticed Officer J. Conley talking with the Clerk of Court and Hannah R. Wimberly. Plaintiff heard Hannah R. Wimberly say loudly, "Me and the Judge want him to go to jail," right after the Clerk had said, "Didn't you drop the charges against Mr. Brown?"

(Dkt. No. 1 at 16 of 38.) When Conley asked Plaintiff what he wanted to do about ticket F591443, Plaintiff said "Not guilty, jury trial." (Id.) Plaintiff alleges that when he started to leave, Defendant Wimberly stated she needed to see Plaintiff because she had some paperwork; it was an arrest warrant for driving on the wrong side of the road. (Id. at 16-17 of 38.) Plaintiff alleges that Wimberly

3

then arrested Plaintiff on warrant 2012A0710300269. (Id. at 17-18.) Plaintiff alleges he was seen by Judge Tupper at bond court on January 24, 2013, and released that same day. (Id. at 18-19.)

Plaintiff alleges he went to court on ticket F591443 on March 29, 2013, where Defendant Conley informed Plaintiff that the case was being transferred to Defendant Wimberly. (Id. at 23 of 38.) He alleges that in May of 2013, he received notice that he was to have a jury trial in case 2012A0710300269 for "driving on the wrong side of the road." (Id. at 24 of 38.) Plaintiff alleges that on June 17, 2013, he met with Magistrate Judge Gilleland-Prince, who informed Plaintiff that she "was . . . going to do a judicial dismissal, and all charges were going to be dropped 'due to many reasons.'" (Id. at 24 of 38.)

Plaintiff also complains about two accident reports filed by Defendant Wimberly that caused him much difficulty with the Department of Motor Vehicles. (Dkt. No. 1 at 19-20 of 38.) Plaintiff alleges that Defendant "Officer Wimberly had filed an accident report that accused Plaintiff of being the driver of Plaintiff's stolen vehicle on the date of October 15, 2012 at the time of an accident that Plaintiff's vehicle had preportedly [sic] been involved in"; the report "includes the ticket #F594886 as the summons that the report was to be associated with." (Id. at 19.) Plaintiff references a second accident report filed by Wimberly. (Id. at 19-20 of 38.) Plaintiff alleges that in January or February of 2013, he received a notice from the DMV that if he did not send a copy of his proof of insurance for the vehicle involved in the accident of October 15, 2012, the DMV would suspend all of Plaintiff's licenses and registrations for South Carolina since the DMV had received information (from the two accident reports) that Plaintiff was the driver of Plaintiff's vehicle during the time of the accident. (Id. at 21 of 38.) Plaintiff states, "The DMV said that if Plaintiff could provide the DMV with a copy of the stolen vehicle report and fix the accident reports, the DMV would be able to reinstate Plaintiff's license." (Id. at 22 of 38.) Plaintiff alleges he tried to get the report, but a representative from the Beaufort County Sheriff's Office said that although she could see that Plaintiff had called the stolen vehicle in, she could not find the report. (Id. at 22-23 of 38.) Plaintiff

states that he continued to attempt to work with the DMV; the DMV representative said they needed a copy of the stolen vehicle report, and only Officer Wimberly or her supervisor could change the accident reports. (Id. at 26-27 of 38.)

Plaintiff alleges that during February, he scheduled to meet with an officer of the Beaufort County Sheriff's Office to report a stolen vehicle. (Dkt. No. 1 at 32 of 38.) Plaintiff alleges that W.P. Murphy would not allow Plaintiff to file the report. (Id. at 32-33 of 38.) Plaintiff contends that he demanded to see the supervisor, who told Plaintiff to leave "before we arrest you for trespassing." (Id. at 33 of 38.) Plaintiff alleges that a few days later, he went to the main Beaufort County Sheriff's Office, met with Officer Hovest, and was able to file the report. (Id. at 34 of 38.) Plaintiff alleges he took this to the DMV, but DMV indicated they "still needed an Officer from Wimberly's unit to send in an FR 310." (Id.) It is not clear whether Plaintiff has ever been able to get a corrected report.

In the "relief" section of his Complaint, Plaintiff states that he seeks, *inter alia*, actual and punitive damages. (Id. at 37-38 of 38.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## **DISCUSSION**

As noted above, Defendants filed a Motion for Summary Judgment, and Plaintiff filed a Response in Opposition to Defendants' motion. (See Dkt. No. 33; Dkt. No. 38.) For the reasons set forth herein, the undersigned recommends granting Defendants' motion as to Plaintiff's federal claims and dismissing any claims pursuant to state law.

### **A.     Plaintiff's Federal Claims**

Plaintiff asserts claims of false arrest, false imprisonment, and malicious prosecution against Defendants. (See generally Dkt. No. 1.) Section 1983 actions premised on alleged false arrest, false imprisonment, and/or malicious prosecution are analyzed as unreasonable seizures under the Fourth Amendment. See, e.g., Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005) (to state a § 1983 claim for malicious prosecution, "we have required that the defendant have seized plaintiff pursuant to legal process that was not supported by probable cause and that the criminal proceedings have terminated in plaintiff's favor" (internal quotation marks and citation omitted); Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. (citing Maryland v. Pringle, 540 U.S. 366, 371

(2003)); Gerstein v. Pugh, 420 U.S. 103, 113-14 (1975) ("[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest."); see also Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 334 (4th Cir. 2009) ("[P]robable cause exists 'where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964))).

In their Motion for Summary Judgment, Defendants contend they are entitled to qualified immunity "as there was probable cause to arrest the Plaintiff given the information the Defendants had as a result of their investigation." (Dkt. No. 33-1 at 1.) Defendants attached their affidavits to their motion. (See Dkt. No. 33-2; Dkt. No. 33-3.) Defendant Wimberly asserts in her affidavit that she was working the midnight shift on October 15, 2012, and is familiar with the collision that occurred that night on South Carolina Highway 170. (Wimberly Aff. ¶ 4.) She states that a 1995 Nissan Sport Utility Vehicle was traveling east on S.C. 170, "crossed the center line, struck the barrier on the bridge, and overturned." (Id. ¶¶ 5-6.) Wimberly indicates that when she arrived at the scene, she noticed "several emergency vehicles, and debris in the roadway, and in fact, noted that another vehicle had already struck the debris causing minor damage." (Id. ¶ 8.) She further states that "emergency personnel were checking to make certain no one had been ejected from the vehicle into the river." (Id. ¶ 9.) Wimberly states that she ran the license plate and found that Plaintiff was listed as the owner of the vehicle. (Id. ¶¶ 11, 13.) She also found a telephone number for the address listed on the vehicle registration, and that when she made a call, "the mother of the owner of the vehicle stated . . . that her son, Jesse Brown[,] had left her house and was headed to his new house in Beaufort from Bluffton." (Id. ¶¶ 11-12.) Wimberly states that the vehicle was towed and no body discovered. (Id. ¶ 15.) Wimberly indicates that she prepared a collision report for the vehicle that struck debris in the roadway; she listed "Unit 1 . . . as an illegally parked vehicle belonging to Jesse

Brown and the Unit 2 was driven by Sarah Hulbert." (Id. ¶¶ 16-17.) Wimberly states that she listed Plaintiff's vehicle as being at fault "for being illegally parked," even though "there was no contact . . . between [Plaintiff's] vehicle and Ms. Hulbert's vehicle," because "Ms. Hulbert struck debris from the initial collision." (Id. ¶¶ 18-19.)

According to Defendant Wimberly, Defendant Conely told her the next morning "that someone from a gas station had called about Jesse Brown entering the store soaking wet to buy cigarettes." (Id. ¶ 24.) Conley told Wimberly the "service attendant wrote down [Plaintiff's] name because she found it out of the ordinary that he came into the store with soaking wet clothes." (Id. ¶ 24.) Upon being advised that Defendant Conley arrested Plaintiff for leaving the scene of an accident, Wimberly stated that she mailed Plaintiff a citation for driving left of center. (Id. ¶¶ 27-28.) On November 6, 2012, Judge Prince decided to nolle pross the ticket issued by Wimberly as it had not been properly delivered, but Wimberly states Judge Prince "allowed [her] to swear out an affidavit for a warrant for" Plaintiff. (Id. ¶ 31.) Wimberly states this warrant "issued on Lance Corporal Conley's court date of January 24, 2013," and Plaintiff was taken to jail. (Id. ¶ 32.) Wimberly indicates that she did not attend Plaintiff's court date of June 17, 2013, and the "Court judicially dismissed the charges on June 17, 2013." (Id. ¶ 33.)

Defendants also attached the affidavit of John Conley to their Motion for Summary Judgment. (See Dkt. No. 33-3.) Defendant Conley states that he was working the day shift on October 15, 2012, and "received a telephone call from Senior Trooper Wimberly explaining that she was investigating a collision that occurred on the Broad River Road Bridge where one vehicle struck the bridge which subsequently caused the shutdown of the bridge to conduct a search for the driver." (Conley Aff. ¶ 4.) Conley also states that a store clerk "at a nearby convenience (Broad River Rd. Pantry) store had called the police station alerting the police that a patron entered the store soaking wet and purchased a package of cigarettes." (Id. ¶ 5.) The clerk found the patron's appearance "odd," so she "wrote down the information provided by the man's identification, and alerted the police of the information

8

she obtained from his identification card." (Id. ¶ 6.) Conley indicates the clerk provided the police with the Plaintiff's name, and "as a result of this information, the search was ceased." (Id. ¶ 7.)

According to Defendant Conley, between the hours of 7:30AM and 8:00AM, the Beaufort County Sheriff's Office advised that the owner of the vehicle had been located and that the owner "was attempting to report his vehicle stolen." (Id. ¶ 9.) Conley states that he went to meet Plaintiff at the residence of Plaintiff's new boss, and Plaintiff stated that he had been at this residence drinking all night, "which was not corroborated by [Plaintiff's] boss." (Id. ¶¶ 11-14, 17.) Conley indicates that instead of corroborating Plaintiff's statement, Plaintiff's boss "brought out a bag containing wet clothing that [Plaintiff] had changed out of." (Id. ¶ 18.) Conley further states that he "smelled the odor of an alcoholic beverage," so he performed field sobriety tests and concluded that Plaintiff was under the influence of alcohol. (Id. ¶ 16.) When Conley asked Plaintiff to pull out his wallet and provide Conley with his driver's licence, Conley "noticed [Plaintiff's] wallet was wet." (Id. ¶ 20.) Conley states that he "felt [he] had enough evidence to place [Plaintiff] behind the wheel as the driver, so [he] arrested [Plaintiff] and transported him to the Beaufort County Detention Center." (Id. ¶ 22.) Conley "issued a summons ticket to [Plaintiff] for leaving the scene of an accident with property damage." (Id. ¶ 23.) Conley further states in his affidavit that he later learned Defendant Wimberly "had several warrants" for Plaintiff, one of which was for leaving the scene, so Conley "nolle prossed the ticket in order to prevent a double jeopardy situation." (Id. ¶¶ 27-28.)

As noted above, Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment. (See Dkt. No. 38; Dkt. No. 38-1.) Plaintiff attached the declaration of his mother, Lois Goodman, to his Response. (See Dkt. No. 38-1 at 1-4 of 39.)[4] In her declaration, Ms. Goodman states, *inter alia*,

---

[4] Although Plaintiff indicates the filing is an affidavit, the "affidavit" does not appear to be notarized. However, the document does contain the language that Goodman "swear[s] under the penalty of perjury that the statement is true, exact and correct." (See Dkt. No. 38-1 at 4 of 39.) Accordingly, the undersigned treats this filing as a declaration. See 28 U.S.C. § 1746.

9

> 7. I state that the statements that Trooper H.R. Wimberly made . . . [in Dkt. No. 33-1 and Dkt. No. 33-2] or "<u>FACTS</u>" derived from her statements, by others,
>
> -concerning myself;
>
> -concerning any contact that she might have had with me (supposedly);
>
> -concerning anything that she stated that I supposedly said;
>
> -concerning any telephone calls supposedly made to me, either from herself, or from the Beaufort County Sheriff's Office;
>
> -concerning any visits that I supposedly had from either of my sons, Jesse or any other, that night, or the day before,
>
> -ARE NOT TRUE AND DID NOT HAPPEN.

(Goodman Decl. ¶ 7.) Goodman states that although she had contact with the police or a trooper that evening, "it was not at all as Trooper Wimberly stated; none of it was by telephone; and [Goodman] did not report the things [Wimberly] said [Goodman] did." (<u>Id</u>. ¶ 8.)

From a review of the foregoing, it appears there is a dispute about what contact police had with Plaintiff's mother, and what Plaintiff's mother told police. However, that dispute is not a material one, and the undersigned recommends granting Defendants' Motion for Summary Judgment. According to the undisputed facts, a vehicle owned by the Plaintiff was involved in a collision on the Broad River Road Bridge, but no driver was located at the scene. It is undisputed that a clerk from the Broad River Road Pantry identified Plaintiff as the individual who came into the store that night, soaking wet, and purchased a package of cigarettes; it is also undisputed that the clerk reported this information to police. It is undisputed that when Conley located Plaintiff between 7:30AM and 8:00AM that morning, Plaintiff did not pass field sobriety tests, and Plaintiff's boss did not corroborate Plaintiff's statement that Plaintiff had been drinking at his boss' house all night. It is undisputed that Plaintiff's boss provided Conley with a bag of Plaintiff's wet clothes and that when Conley asked Plaintiff for his driver's license, Plaintiff's wallet was wet.

On these undisputed facts, Defendants are entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

Plaintiff's real contention in the case *sub judice* appears to be that he was not the driver, as his vehicle was stolen. But regardless of whether Plaintiff really was the driver or not, Defendants certainly had reason to believe that he was and that he had committed the at-issue traffic offenses. See Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." (internal quotation marks and citations omitted)); Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 334 (4th Cir. 2009) ("[P]robable cause exists 'where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); see also S.C. CODE ANN. § 56-5-1220; S.C. CODE ANN. § 56-5-1250; S.C. CODE ANN. § 56-5-1810; S.C. CODE ANN. § 56-5-1880; S.C. CODE ANN. § 56-5-5950. The undersigned therefore concludes that Defendants are entitled to qualified immunity and recommends granting Defendants' Motion for Summary Judgment as to Plaintiff's federal claims.

**B.     Plaintiff's State Claims**

Given that Plaintiff's federal claims fail, the undersigned recommends dismissing any claims Plaintiff attempts to bring pursuant to state law. See 28 U.S.C. § 1367(c)(3); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also United States ex rel. Scott v. Metropolitan Health Corp., 375 F.Supp.2d 626, 647 (W.D. Mich. 2005).

## CONCLUSION

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 33) be GRANTED as to Plaintiff's federal claims. Furthermore, to the extent Plaintiff's Complaint contains causes of action pursuant to state law, it is further RECOMMENDED that those claims be DISMISSED pursuant to 28 U.S.C. § 1367(c).

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 13, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).